# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LANCE THOMAS** | : | |
| | : | **CIVIL ACTION  NO. 3:10-2481** |
| **Petitioner** | | |
| | : | **(CAPUTO, D.J.)** |
| **v.** | | **(MANNION, M.J.)** |
| | : | |
| **SUPERINTENDENT RAYMOND** | | |
| **LAWLER and PENNSYLVANIA** | : | |
| **ATTORNEY GENERAL** | | |
| | : | |
| **Respondents.** | | |

## MEMORANDUM AND ORDER[1]

On December 3, 2010, Petitioner Lance Thomas ("Thomas") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 . (Doc. No. 1). For the reasons set forth below, the court will appoint the Federal Public Defender for the Middle District of Pennsylvania as counsel for the petitioner, and direct further briefing by the parties on the issues that follow.

## I.    BACKGROUND

On December 3, 2010, Thomas filed the instant habeas petition

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

(along with supporting exhibits) arguing that his substantive due process rights were violated because he has a protected liberty interest in being released on parole; and also that his equal protection rights were violated because he was classified as a sex offender.  (Doc. No. 1 at 5, 11 and 17). On March 14, 2011, respondents filed a reply to the petition, along with supporting exhibits. (Doc. No. 11). No traverse was filed.

## II.   DISCUSSION

1.  Facts

In 1992, Thomas plead guilty to rape, burglary and corruption of minors. He was released on parole, but in 1999, he plead guilty to a probation violation and had his parole revoked. He was sentenced to 2 ½ to 5 years imprisonment - this results in a current maximum date of September 25, 2014.

On May 18, 2010, the Pennsylvania Board of Probation and Parole (hereinafter "the parole board") granted petitioner parole, based on a condition including, among many other conditions, that he be placed in a Specialized Community Corrections Center ("CCC").

On October 25, 2010, Thomas received a letter from Jack Sommers, the Director of the Bureau of Community Corrections for the Pennsylvania

Department of Corrections.  The letter reads, in salient part:

> As you know a BCC referral was received and rejected as
> problematic by the Regional Office on 6/21/10. You need to speak
> with your Unit Management Team and Parole staff regarding your
> situation. You have a serious offense in your history which doesn't
> make you an above average candidate for a Community
> Corrections Center.
>
> Region 1 has very few "regular" sex offender group room beds for
> placement of cases such as yours. However, currently there are
> no State "Specialized" Centers in Region 1 at this time that
> house[] individuals with your type of previous offense. A cross
> regional referral is possible, but the waiting list is very long and
> only a percentage of cases such as yours are placed in a
> specialized CCC at one time.
>
> You should be working with parole on attempting to get released
> directly to the community with an approved home plan.

(Doc. No. 1 at 23).

> According to respondents,
>
> The [parole board] has the power under Pennsylvania law to enter
> into contracts to purchase community services to assist state
> parolees, including contract to lease residential facilities in
> communities within which to house inmates who are being
> conditionally paroled. Over the years[,] the [parole board] has
> relied on Community Correction Resident or group home
> residences (referred to as "CCRs") either operated[,] or
> supervised by[,] the DOC when conditioning the release of certain
> offenders granted parole. Under such conditional circumstances,
> inmates may be released on parole only if they obtain occupancy
> in a CCR. CCCs are principally operated by private contractors
> who respond to requests for proposals from the DOC. They are
> geographically distributed throughout Pennsylvania.

The DOC, through its Bureau of Community Corrections ("BCC"), also directly operates CCRs with B[C]C staff in certain locations. Sex offenders are not housed in privately owned CCCs under contract with the DOC. When CCRs are willing to accept sex offenders, they have limited the number of placements or beds assigned to sex offenders. Opposition by the community, including restrictions placed on sex offender occupancy, is a factor in the very limited number of CCC beds available to sex offenders.

BCCs are administered regionally in the three geographic regions in Pennsylvania. Region 1 covers Philadelphia, Delaware and Chester counties. Region II covers the rest of eastern Pennsyvlania[,] as well as all of central Pennsylvania. Region III covers western Pennsylvania. Typically inmates are only released on parole in the region they lived in prior to incarceration.

(Doc. No. 11-1 at 3-4).

To summarize petitioner could not be released on parole because one of the conditions set forth by the parole board was that Thomas be released to a CCC, and at the time, there were no available placements in a CCC or CCR that accepts sex offenders.

2. Analysis

Thomas argues that he has a protected liberty interest in being released on parole, and the DOC has violated his due process rights by not releasing him. He also argues that his equal protection rights have been violated because he is being discriminated against for having a prior sex offense.

Respondents argue that there has been no constitutional violation.

4

Respondents rely, in great part, on a recent opinion issued in the Middle District by Judge Blewitt, and adopted by Judge Conner.[2]

While the issue before by Judge Blewitt was almost identical to the one at hand (a state prisoner who was granted parole, but due to a lack of bed space at a CCC or CCR, remained imprisoned after the grant of parole); there is one distinguishing factor between that case and the instant action[3] - the prisoner there was released on parole during the pendency of the action, thus rendering his injunctive request moot.  Here, Thomas is still imprisoned (to the best of our knowledge), thus a request for relief that demands release from imprisonment is not moot in the instant action.

As an initial matter, it seems clear that there is no equal protection violation for classifying petitioner as a sex offender and basing the conditions of his release on that classification. Sex offender status is not a protected class, thus classification as such is subject only to a rational basis test, and not to strict scrutiny. *See City of Cleburne v. Cleburne Living Ctr*, 473 U.S.

---

[2]The report and recommendation issued by Judge Blewitt is attached. (*Garrett Williams v Jeffrey Beard*, *et. al.* 1-09-CV-1587 (Doc. No. 24).  Also attached is Judge Conner's adoption of the report and recommendation. (Doc. No. 30). Also attached is the Third Circuit's opinion and judgment on the mootness issue. (Doc. No. 36).

[3]Other than the fact that that case was brought as a 28 U.S.C. §1983 case, which affords different relief than does a habeas petition.

432; 105 S. Ct. 3249; 87 L. Ed. 2d 313 (stating that classifications based on race, alienage or national origin are subject to strict scrutiny analysis, those based on gender and illegitimacy call for heightened scrutiny); *see also Chapman v. United States*, 500 U.S. 453; 11 S. Ct. 1919; 114 L. Ed. 2d 524 (applying a rational basis test to classifications based on the nature of the crime). The Equal Protection clause only requires the state to provide some plausible reason for treating convicted sex-offenders differently than others convicted of crimes. Because we are giving an opportunity for the parties to brief other issues, we are not foreclosing the issue, should counsel choose to argue it further, however, it seems doubtful that there was an equal protection violation here.

Thomas is not the first inmate to bring a claim like this one. *See Jago v. Van Curen,* 454 U.S. 14; 102 S. Ct. 31; 70 L. Ed. 2d 13 (1981) (per curiam) (holding that an inmate who was granted parole, then, prior to his physical release on parole, had his parole revoked by the parole board for lying to the parole board, had no protected interest in that revocation) (however, Stevens, dissenting, stating that an inmate has greater legal rights as a parolee then before, and the question the court should have addressed is which event triggers the change in legal rights - the act of walking through the exit gates

or the State's formal decision). Similar claims also have been rejected by district courts in this state before. *See Harper v. Thomas,* 2007 WL 2713246 (E.D. Pa. 2007) (Dalzell, J.); *White v. Grace,* 2005 WL 1653436 (M.D. Pa. 2005) (Nealon, J.).

It is clear that there is no protected interest in being granted parole by the parole board. "There is no constitutional or inherent right of a convicted person to be conditionally release before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7; 99 S. Ct. 2100; 60 L. Ed. 2d 668 (1979); *see also Jago, supra.*

What is not clear however, is if a protected interest exists after a grant of parole has been given by the Parole Board yet before the DOC has physically released the inmate from incarceration. In other words, it is clear that Thomas did not have a liberty interest in being paroled. Had the parole board denied a grant of parole to Thomas, Thomas would have no legal recourse.[4] However, at some point in time after parole is granted, a liberty interest does attach. *See Greenholtz,* 442 U.S. at 9 (stating that once paroled, there is a liberty interest that requires due process protections upon

---

[4]Other than not being denied parole for arbitrary or conditionally impermissible reasons, i.e. a decision based solely on race. *See e.g.*, *Block v. Potter,* 631 F.2d 233 (3d Cir. 1980).

revocation of parole); *Morrissey v. Brewer*, 408 U.S. 471; 92 S. Ct. 2593; 33 L. Ed. 2d 484 (1972) (holding that parole revocation does implicate the parolee's liberty interests thus termination of that liberty requires some due process mandated protections).

Thus, several questions flow from this implication. Is the court bound by *Jago, supra*, or is that case factually distinguishable? When does this liberty interest attach? Does it attach upon grant of parole? Does it only attach after the DOC physically releases the inmate from incarceration (assuming parole is not revoked by some fault of the inmate)? What happens if the DOC or inmate is unable to meet the conditions of parole set by the parole board? Is it permissible for the DOC to unilaterally decide to keep the inmate incarcerated, or is some further intervention by the parole board required?

As a result, it will be ordered that the parties be given an opportunity to brief the issues raised in this Memorandum and Order. Because the petitioner's claim may have some merit in fact and law and because of the complexity of the legal issues, the court will appoint counsel for Thomas to brief the issue on his behalf.[5]

---

[5]Appointment of counsel is discretionary with the court. 18 U.S.C. §3006A(a)(2)(B). Counsel must be appointed for an indigent federal habeas petitioner only when required by the interests of justice or due process. Schultz v. Wainwright, 701 F.2d 900 (11th Circuit 1983). In *Tabron v. Grace*,

At a minimum, the issue to be briefed is: at what point does a liberty interest attach to an inmate who has been granted parole?

## III.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

**(1)** The Federal Public Defender for the Middle District of Pennsylvania is appointed to represent the petitioner; and

**(2)** A brief addressing the issues set forth above shall be filed by

---

the Third Circuit announced the factors that are to be considered by a district court in deciding whether to exercise its discretion and seek counsel for an indigent litigant in a civil case. 6 F.3d 147, 153 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994). Although the *Tabron* court was applying 28 U.S.C. §1915(e)(1), district courts have held that the factors set forth under *Tabron* are equally applicable to 18 U.S.C. § 3006A(a)(2)(B). See Kotey v. Gonzalez, 2007 U.S. Dist. LEXIS 21654, 2007 WL 951436 (D.N.J. 2007) (Linares, J); Santos v. Diguglielmo, 2007 U.S. Dist. LEXIS 14813, 2007 WL 675351 (M.D. Pa. 2007) (Mannion, M.J.); George v. Pa. A.G., 2007 U.S. Dist. LEXIS 90895, 2007 WL 4369924 (M.D. Pa. 2007) (Caputo, J.). Under *Tabron*, the first consideration by a district court should be whether the [petitioner's] claim has "some merit in fact and law." Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 157).

Only after determining that the claim has some merit should the court consider these six additional factors: 1) the [petitioner's] ability to present his or her own case; 2) the complexity of the legal issues; 3) the degree to which factual investigation will be necessary and the [petitioner's] ability to pursue such an investigation; 4) the amount the case is likely to turn on credibility determinations; 5) whether the case will require the testimony of expert witnesses; and 6) whether the [petitioner] can attain and afford counsel on his own behalf. Id. at 457-58 (citing Tabron, 6 F.3d at 155-56, 157 n. 5).

petitioner's counsel, on or before **May 7, 2012**.

**(3)** Counsel for the respondents shall file a responsive brief, on or before **May 21, 2012**.

**(4)** A reply brief may be filed, on or before **June 4, 2012.**


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: April 9, 2012.
O:\shared\MEMORANDA\2010 MEMORANDA\10-2481-01.wpd

10